Docket No. 96325–Agenda 11–January 2004.

HAROLD A. FRITZ, Appellant, v. JOHN W. JOHNSTON 
et al
., Appellees.

Opinion filed March 18, 2004.

JUSTICE FREEMAN delivered the opinion of the court:

The primary issue in this case may be stated concisely: Does the doctrine of sovereign immunity deprive circuit courts of jurisdiction over claims that state employees engaged in civil conspiracy in the furtherance of which unlawful acts were committed? We answer this question in the negative; sovereign immunity does not apply. However, plaintiff failed to state a cause of action for civil conspiracy with respect to two defendants. Accordingly, we affirm the circuit court’s judgment in part and reverse in part.

BACKGROUND

The case comes before us on appeal from the dismissal of plaintiff’s third amended complaint (complaint). The following factual background is derived solely from the allegations contained in that document.

Plaintiff Harold Fritz is a decorated veteran of the United States Army, who retired with a rank of Lieutenant-Colonel. Prior to 1999, he was serving the State of Illinois as the deputy director of the Illinois Department of Veterans Affairs (Department). He was one of three finalists for the position of Director of Veterans Affairs when a new director was appointed in January 1999, but that post went instead to defendant John Johnston, and defendant continued in his position as deputy director. Defendant Betty Bergstrom was at all pertinent times employed as Johnston’s administrative assistant. Defendants Elizabeth Gaffney and Diane Ford were also employed by the state, as an assistant legislative officer and as the Governor’s personal legal counsel, respectively.

In July 1999, defendant Johnston contacted the Illinois State Police to request that the police commence an investigation of plaintiff. Johnston asserted that plaintiff had threatened his “physical integrity” as well as threatening “potential damage to his personal home.” Johnston informed the police that plaintiff had also threatened Bergstrom with physical violence. Plaintiff alleged that these charges were false and that Johnston and Bergstrom knew them to be false at the time they were made. No charges or action were ever brought against plaintiff as a result of the police investigation, which concluded in December 1999.

At some point after Johnston contacted the State Police, but before the “official commencement” of the State Police investigation, Illinois State Representative Ron Stephens asked plaintiff to resign his post. Representative Stephens allegedly informed plaintiff that the Governor wished to appoint a different person to plaintiff’s post as deputy director, and wished to secure his voluntary retirement. Representative Stephens also allegedly informed plaintiff that the State Police investigation Johnston had set into motion would commence unless he resigned. Plaintiff alleged that Representative Stephens had delivered this message to plaintiff at the behest of defendants Gaffney and Ford. Plaintiff did not resign.

The first four counts of plaintiff’s complaint were separate allegations of civil conspiracy against each of the above four defendants. Plaintiff contended that defendants had conspired to force him out of his job, and alleged that he endured mental anguish and “derogation of his name and reputation” as a result of their actions. In counts V and VI, plaintiff alleged that through their actions defendants Gaffney and Johnston had committed “intentional interference with employment and economic gains derivable therefrom.”

Defendants moved to dismiss pursuant to sections 2–615 and 2–619 of the Code of Civil Procedure (735 ILCS 5/2–615, 2–619 (West 1998)). Defendants argued that the circuit court was without jurisdiction to hear plaintiff’s claims because, under the doctrine of sovereign immunity, plaintiff’s action was in reality one against the State of Illinois. Defendants also argued that they were protected by public official immunity. Finally, defendants contended that plaintiff failed to state a claim for which relief could be granted, both on the conspiracy counts and on the counts alleging intentional interference with an employment relationship.

The circuit court of Sangamon County granted defendants’ motion to dismiss on each of the grounds raised. The court ruled that plaintiff’s claims were barred by both the doctrine of sovereign immunity and the doctrine of public official immunity. The court also found that plaintiff had both failed to allege all elements of conspiracy–because he had failed to allege an “underlying tort or crime”–and failed to allege all elements of intentional interference with an employment relationship–because he failed to allege any damages. Finally, the court noted that plaintiff had requested punitive damages without first seeking leave of court, and dismissed the complaint in its entirety.

A divided appellate court affirmed the dismissal. No. 4–02–0033 (unpublished under Supreme Court Rule 23). The appellate majority found it necessary only to reach the issue of sovereign immunity, and affirmed the circuit court on this ground. The court explained that even though plaintiff did not bring suit against the state in name, plaintiff’s suit was in fact a claim against the state because it had the potential to “control the State’s actions” by “limit[ing a state] employee’s ability to engage in lawful activity on behalf of the state.” The majority noted that at the time Johnston filed his complaint with the State Police, there existed an administrative order which provided that “[a]ll incidents involving State employees which *** involve a violation of the Illinois Criminal Code *** shall be reported to the [Illinois State Police] without exception.” See Administrative Order No. 1, 19 Ill. Reg. 1019, 1020 (1995). Accordingly, the majority reasoned, Johnston’s report to the State Police constituted lawful activity on behalf of the state. The majority also concluded that since it was legal for the Governor to request a political appointee to resign, Gaffney and Ford’s actions were also legal activity on behalf of the state.

Presiding Justice Myerscough agreed with the majority that the circuit court properly dismissed counts V and VI, alleging intentional interference with an employment relationship. However, she parted company with the majority with respect to the conspiracy claims. Presiding Justice Myerscough noted that filing a false report with the State Police is a misdemeanor crime, and reasoned that because plaintiff alleged that Johnston knew the reports were false at the time he filed them, those reports could not be considered “lawful activity on behalf of the state,” regardless of the administrative order to which the majority referred. The dissent went on to conclude that defendants were not shielded by public official immunity, and that plaintiff had adequately stated a cause of action.

Plaintiff petitioned this court for leave to appeal (177 Ill. 2d R. 315(a)), which we granted.

ANALYSIS

Before this court the issues have been pared down. Plaintiff does not challenge the circuit court’s dismissal of counts V and VI, which alleged intentional interference with employment relationship. Defendants, for their part, have affirmatively abandoned their public official immunity argument. Accordingly, the sole questions are whether sovereign immunity applies on the facts of this case–which determines whether the circuit court had jurisdiction of the suit–and, if the circuit court did have jurisdiction, whether plaintiff stated a claim for conspiracy. Because the issues arose in the context of a motion to dismiss plaintiff’s complaint, we are required to “ ‘interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.’ ” 
Van Meter v. Darien Park District
, 207 Ill. 2d 359, 367-68 (2003), quoting 
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 189 (1997). We must also accept as true “all inferences that can reasonably be drawn in plaintiff’s favor.” 
Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago
, 189 Ill. 2d 200, 206 (2000). Our standard of review is 
de novo
. 
Van Meter
, 207 Ill. 2d at 368.

I. Sovereign Immunity

In the Illinois Constitution of 1970, this state abolished the defense of sovereign immunity “[e]xcept as the General Assembly may provide by law.” Ill. Const. 1970, art. XIII, §4. In response, the legislature enacted the State Lawsuit Immunity Act (Immunity Act) (745 ILCS 5/0.01 
et seq.
 (West 1998)). Section 1 of the Immunity Act (745 ILCS 5/1 (West 1998) provides that “the State of Illinois shall not be made a defendant or party in any court” except as provided by the Illinois Public Labor Relations Act (5 ILCS 315/1 
et seq.
 (West 1998)) or the Court of Claims Act (705 ILCS 505/1 (West 1998)).
(footnote: 1)
 In the Court of Claims Act, the legislature provided that the Court of Claims has exclusive jurisdiction over “[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, *** provided, that an award for damages in a case sounding in tort, other than certain cases involving the operation of a State vehicle described in this paragraph, shall not exceed the sum of $100,000 to or for the benefit of any claimant.” 705 ILCS 505/8(d) (West 1998). This language is clear and unambiguous; all claims against the state for damages sounding in tort must be brought in the Court of Claims–no other tribunal, including our circuit courts, has jurisdiction of any such claim. The question, therefore, is whether the instant case involved “claims against the State.”

On its face, plaintiff’s claim is not one against the state, as the state is not named as a defendant. Rather, plaintiff has brought suit exclusively against individuals. However, those individuals are state employees, and this court has recognized that actions against state employees must sometimes be characterized as actions against the state.

“The determination of whether an action is in fact a suit against the State turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties. [Citations.] An action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability.” 
Currie v. Lao
, 148 Ill. 2d 151, 158 (1992).

The determination whether an action against a state employee ought to be characterized as an action against the state, does not depend simply upon whether the employee was acting within the scope of his employment when he committed the act in question. Rather, the applicability of sovereign immunity turns on the 
source of the duty 
with the breach of which the employee is charged. 
Currie
, 148 Ill. 2d at 159. Where the duty is imposed solely by virtue of the individual’s employment with the state, sovereign immunity attaches and exclusive jurisdiction lies in the Court of Claims. 
Currie
, 148 Ill. 2d at 159. Otherwise–that is, if the duty exists independent of state employment–the individual is subject to suit in circuit court. “In other words, where an employee of the State, although acting within the scope of his employment, is charged with breaching a duty that arose independently of his State employment, a suit against him will not be shielded by sovereign immunity.” 
Currie
, 148 Ill. 2d at 159. See also 
Healy v. Vaupel
, 133 Ill. 2d 295, 308 (1990) (“Sovereign immunity affords no protection, *** when it is alleged that the State’s agent acted in violation of statutory or constitutional law or in excess of his authority, and in those instances an action may be brought in circuit court”).

A. Johnston and Bergstrom

Defendants’ argument that plaintiff’s claims against Johnston and Bergstrom are barred by sovereign immunity is undone by plaintiff’s contention that these two defendants knew their accusations against plaintiff to be false at the time those accusations were made. Accepting plaintiff’s contention as true, as we must, Johnston committed the criminal offense of disorderly conduct when he made his report to the State Police. See 720 ILCS 5/26–1(a)(4) (West 1998) (a person commits disorderly conduct when he “[t]ransmits or causes to be transmitted in any manner to any peace officer, public officer or public employee a report to the effect that an offense *** has been committed, knowing at the time of such transmission that there is no reasonable ground for believing that such an offense *** has been committed”). Bergstrom committed this same offense at the time that she falsely accused plaintiff to Johnston, who is a “public employee.” Thus, since plaintiff has alleged that Johnston and Bergstrom acted “in violation of statutory or constitutional law,” the action may be brought in circuit court. 
Healy
, 133 Ill. 2d at 308.

The appellate court relied heavily on the fact that the report to the State Police was required by an administrative order which provided that “All incidents involving State employees which *** involve a violation of the Illinois Criminal Code *** shall be reported to the [Illinois State Police] without exception.” Administrative Order No. 1, 19 Ill. Reg. 1019, 1020 (1995). First, this order clearly did not require Johnston to file a 
false
 report of a threat against 
himself
. Second, regardless of whether Johnston had an obligation to pass on to the State Police Bergstrom’s allegation if he knew it was false, Bergstrom committed disorderly conduct in making a false allegation to Johnston, as noted above. Thus, regardless of the existence and applicability of the administrative order, both these defendants violated the criminal law, accepting plaintiff’s allegations as true.

Finally, the administrative order is irrelevant because plaintiff is not alleging that defendants violated that order. In other words, the administrative order is not the source of the duty which plaintiff alleges defendants have breached. Rather, plaintiff alleges defendants breached a duty imposed by Illinois criminal law–which applies to all individuals, not merely to state employees. Because the duty to obey the criminal law “arose independently of *** State employment,” sovereign immunity does not apply. 
Currie
, 148 Ill. 2d at 159.

Defendants rely heavily on 
Wozniak v. Conry
, 288 Ill. App. 3d 129 (1997), as did the appellate majority. There, our appellate court held that a suit alleging that an acting department head had interfered with an associate professor’s employment contract by making false accusations about him was an action against the state, covered by sovereign immunity. In that portion of its opinion upon which the appellate majority in the instant case relied, the 
Wozniak
 court reasoned,

“The threat of private suits against supervisors for work-related statements about those under their authority clearly would affect the way supervisors communicate, allocate tasks, and make employment decisions. Accordingly, when a supervisor for a state department or entity is sued by an employee for statements regarding the employee’s work-related conduct and pending personnel decisions, the suit necessarily threatens to control the actions of the state. It does not matter if, as here, the plaintiff alleges the statements were knowingly false. [Citation.] Instead, the relevant inquiry is whether the supervisor would be acting within the scope of his duties by making truthful statements of the general type alleged.” 
Wozniak
, 288 Ill. App. 3d at 133-34.

We need not express an opinion on whether 
Wozniak
 reached the correct result on its facts, because the case is distinguishable. As the appellate court dissent noted in this case, 
Wozniak
 involved a state employee in a supervisory role who merely made “work-related statements” within the context of that supervisory role. The instant case, by contrast, involves allegedly false reports to an independent agency–the State Police–in direct violation of criminal law. See 720 ILCS 5/26–1(a)(4) (West 1998). 
Wozniak
 itself acknowledged that a statutory violation would change the legal calculus, in the very next sentences after those above quoted:

“However, this rule–that a suit against a state employee constitutes a suit against the state when a judgment for a plaintiff could control the state’s actions–is not without limits. Whenever a state employee performs illegally, unconstitutionally, or without authority, a suit may still be maintained against the employee in his individual capacity and does not constitute an action against the State of Illinois.” 
Wozniak
, 288 Ill. App. 3d at 134.

Defendants also note that this court has previously upheld a circuit court’s dismissal of a complaint as barred by sovereign immunity notwithstanding that a plaintiff’s claim was based on an alleged statutory violation. See 
Ellis v. Board of Governors of State Colleges & Universities
, 102 Ill. 2d 387 (1984). There, a professor filed suit against the Board of Governors of State Colleges and Universities of Illinois, alleging that the Board had constructively discharged her “in violation of section 8(3) of ‘An Act to provide for the management, operation, control and maintenance of the State Colleges and Universities System’ (Ill. Rev. Stat. 1981, ch. 144, par. 1008(3)).” 
Ellis
, 102 Ill. 2d at 389. This court held that the circuit court had acted correctly in dismissing the complaint based on sovereign immunity, and rejected the plaintiff’s argument that sovereign immunity should not apply because her claim was based on a statutory violation.

Like 
Wozniak
, 
Ellis
 is distinguishable. Although 
Ellis
 might appear to conflict with 
Healy
 (see 
Healy
, 133 Ill. 2d at 308 (sovereign immunity does not apply when a plaintiff alleges that a state official “acted in violation of statutory or constitutional law or in excess of his authority”)), the cases are reconcilable. Again, the critical question is the source of the duty the employee is alleged to have violated–and specifically, whether that duty exists solely by virtue of the defendant’s state employment. 
Currie
, 148 Ill. 2d at 159. The statute at issue in 
Ellis
 did not apply to the public as a whole. Rather, it proscribed the actions 
of state employees
 in operating the State Colleges and Universities System. Accordingly, even though a statute was involved, the duties allegedly breached by the Board members in 
Ellis
 arose solely by virtue of their state employment. 
That
 is the critical question. In the instant case, by contrast, the duty 
not
 to make false accusations of criminal conduct is imposed by the Illinois Criminal Code, which makes no distinction between accusations by state employees and those leveled by non-state employees. Accordingly, the duties allegedly breached by defendants did not arise solely by virtue of their state employment, and sovereign immunity therefore does not apply.

B. Gaffney and Ford

Plaintiff does not allege that defendants Gaffney and Ford directly violated any criminal statutes. He merely contends that they conspired with defendants Johnston and Bergstrom to force him out of his position with the state with a threat of a State Police investigation based on false claims. We must therefore determine if the circuit court had jurisdiction over plaintiff’s claims against Gaffney and Ford, or plaintiff’s causes of action must be separated, because the claims against Gaffney and Ford are truly claims against the state.

We conclude that the claims against Gaffney and Ford are not barred by sovereign immunity. Although with respect to defendants Johnston and Bergstrom we focused on the source of the duty allegedly breached, it is helpful now to recall the more fundamental principle that sovereign immunity is designed to protect the state’s autonomy of action and to preserve state funds–not to protect individuals. 
People v. Philip Morris, Inc.
, 198 Ill. 2d 87, 96 (2001); 
People ex rel. Manning v. Nickerson
, 184 Ill. 2d 245, 248 (1998). Although sovereign immunity can encompass claims against individual state employees, that is an exception to the general rule, and will be found only “where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability.” 
Currie
, 148 Ill. 2d at 158. As the appellate majority noted, citing 
Wozniak v. Conry
, 288 Ill. App. 3d 129, 133 (1997), this will be found when a verdict for the plaintiff “would limit the employee’s ability to engage in lawful activity on behalf of the State.”

The appellate majority reasoned that because there was nothing unlawful about Gaffney and Ford’s attempting to convince plaintiff to resign his position, a verdict against them would have the effect of limiting their ability to engage in lawful activity on behalf of the state, and accordingly sovereign immunity applied. This conclusion might be correct, if the actions of Gaffney and Ford in contacting Representative Stephens and obtaining his assistance in urging plaintiff to resign his post were considered in a vacuum, divorced from the other allegations contained within the complaint.

However, plaintiff contended that Gaffney and Ford’s actions were in furtherance of a conspiracy with Johnston and Bergstrom. Accepting as true, for the moment, the allegation that Gaffney and Ford were in fact conspiring with the other defendants–who allegedly filed false reports with the State Police in furtherance of the conspiracy–Gaffney and Ford’s actions 
in furtherance of that conspiracy
 cannot properly be characterized as “lawful actions on behalf of the State.” The possibility that Gaffney and Ford might be held liable for acting in furtherance of a civil conspiracy–notwithstanding that their actions might appear innocent if divorced from context–should not preclude or chill state employees from engaging in lawful conduct on behalf of the state. Accordingly, sovereign immunity should not preclude plaintiff’s suit.

Sovereign immunity is “not about fairness” (
People ex rel. Manning v. Nickerson
, 184 Ill. 2d 245, 249 (1998)) or efficiency. Our conclusion regarding plaintiff’s claims against Gaffney and Ford is based not on considerations of judicial economy, but rather on the allegations in plaintiff’s complaint, taken liberally in plaintiff’s favor. Although there can be cases in which it would be appropriate to split issues between the circuit court and the Court of Claims, due to sovereign immunity concerns (see, 
e.g.
,
 Nickerson
, 184 Ill. 2d 245; 
People ex rel. Department of Transportation v. Cook Development Co.
, 274 Ill. App. 3d 175 (1995); 
People v. Patrick J. Gorman Consultants, Inc.
, 111 Ill. App. 3d 729 (1982)), this is not such a case.

II. Failure to State a Claim

Defendants additionally argue that plaintiff failed to state a claim for conspiracy. They contend that plaintiff alleged no facts from which the existence of any agreement between defendants can be inferred, and further failed to allege any injury. We agree that plaintiff failed to allege any facts from which the existence of a conspiracy could be inferred with respect to defendants Gaffney and Ford, and accordingly affirm the circuit court’s dismissal of plaintiff’s claim against those two defendants.

The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. 
Adcock v. Brakegate, Ltd.
, 164 Ill. 2d 54, 62-63 (1994).

Plaintiff’s claim is not wholly deficient. Plaintiff satisfied the second and third enumerated requirements with respect to all defendants. The allegation that defendants were attempting to induce him to resign by filing false reports with the Illinois State Police sufficiently charged that defendants were pursuing a lawful purpose by unlawful means. The allegation that Johnston did in fact file a false report with the State Police satisfies the third element, the actual commission of an overt unlawful act by one of the conspirators. With regard to damages, plaintiff explicitly alleged that he suffered mental anguish as well as the derogation of his name and reputation because of the untrue accusation that he had threatened Johnston and Bergstrom. Defendants provide us with no argument as to why these damages should not suffice to state a claim.

The difficulty is with the first element of civil conspiracy, the allegation that the persons acted in concert. We believe that plaintiff did sufficiently allege facts from which a conspiracy between Johnston and Bergstrom could be inferred. The fact that Johnston and Bergstrom, his administrative assistant, allegedly simultaneously came forward with false allegations regarding plaintiff makes reasonable the inference at this stage of the proceedings that they were acting in concert. However, plaintiff alleges no facts to support the bald assertion that the other two defendants, Gaffney and Ford, conspired with Johnston and Bergstrom. As defendants note in their brief to this court, the allegations in the complaint

“merely indicate that the Governor’s Office found out about a complaint to the State Police that the Deputy Director of a State agency had threatened the Director and the Director’s administrative assistant. This complaint obviously reflected a serious conflict between the Director and the Deputy Director that needed to be addressed. The Governor’s Office sought to solve the problem by convincing the Deputy Director to transfer to a different State agency. There is nothing inherently conspiratorial about this situation, even taking into account the allegation that [plaintiff] was told that the State Police would conduct an investigation of his purported threats against Johnston and Bergstrom if he did not agree to be transferred. It is reasonable that a decision by [plaintiff] to remain [in his position] would necessitate an investigation into the charge that he had threatened coworkers in that agency.”

We agree with defendants. There are simply no facts to support the conclusion that Gaffney and Ford conspired with Johnston and/or Bergstrom to force plaintiff from his post, or even that they were aware that the reports to the State Police were, as plaintiff alleges, intentionally falsified. Plaintiff’s statement that they conspired is insufficient–the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred. With respect to defendants Gaffney and Ford, no such facts were pled.

CONCLUSION

The purpose of the doctrine of sovereign immunity is preservation and protection of the property and autonomy of the state. It is not designed to shield state employees from being held accountable for their criminal actions, and thus Johnston and Bergstrom are not immune from plaintiff’s suit. Nor is sovereign immunity intended to shield even otherwise lawful actions by state employees, when those actions are committed in the furtherance of a conspiracy. Accordingly, defendants Gaffney and Ford also are not protected by the doctrine. Plaintiff did state a cause of action for conspiracy against defendants Johnston and Bergstrom, and accordingly the circuit court erred in dismissing counts I and II of the complaint, which contained those claims. However, plaintiff failed to allege any facts from which to infer that defendants Gaffney and Ford were participants in that conspiracy, and thus the circuit court acted properly in dismissing counts III and IV of the complaint. Accordingly, the judgment of the appellate court is affirmed in part and reversed in part and the circuit court’s order dismissing plaintiff’s complaint is affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings.

Appellate court judgment affirmed

in part and reversed in part;

circuit court judgment affirmed

in part and reversed in part;

cause remanded.

FOOTNOTES
1:     
1
The Immunity Act was amended while this case was pending on appeal (see Pub. Act 93–615, eff. November 19, 2003; Pub. Act 93–414, eff. January 1, 2004), but neither party places any reliance on the amendments or on the Illinois Public Labor Relations Act.