# Illinois Official Reports

## Appellate Court

---

### *Grainger v. Harrah's Casino*, 2014 IL App (3d) 130029

---

| | |
|---|---|
| Appellate Court Caption | DON GRAINGER, Plaintiff-Appellant, v. HARRAH'S CASINO, d/b/a Joliet Harrah's Casino, JASON GLICKMAN, and WILLIAM LYNCH, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-13-0029 |
| Rule 23 Order filed<br>Motion to publish<br>allowed<br>Opinion filed | July 11, 2014<br><br>September 16, 2014<br>September 16, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action against a casino, a security supervisor, and an agent of the Illinois Gaming Board for false imprisonment and intentional infliction of emotional distress suffered by a casino patron who won a jackpot and was then detained, handcuffed and taken to the police station when he provided a Georgia driver's license that looked "suspicious" to the security supervisor in the course of collecting his winnings, the trial court's entry of summary judgment for the Gaming Board agent on sovereign immunity grounds was affirmed and the verdict for the casino and the supervisor on the false imprisonment claim was upheld, since the arrest and brief detention of plaintiff were within the agent's normal and official duties, and the trial court did not err in refusing to give the plaintiff's tendered instruction requiring that a security officer must pursue "reasonable avenues of investigation" in order to have probable cause to restrain or arrest a person, especially when the definition of "probable cause" for purposes of a false imprisonment claim does not include a requirement of a "reasonable investigation." |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 09-L-794; the Hon. Raymond E. Rossi and the Hon. Michael J. Powers, Judges, presiding. |

| Judgment | Affirmed. |
|---|---|

| Counsel on Appeal | Lonny Ben Ogus (argued), of Chicago, for appellant. |
|---|---|
| | Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro (argued), Solicitor General, of counsel), for appellee William Lynch. |
| | Francis P. Kasbohm (argued), of Feiereisel & Kasbohm, of Chicago, for other appellees. |

| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Justices McDade and Schmidt concurred in the judgment and opinion. |
|---|---|

## OPINION

¶ 1     The plaintiff, Don Grainger, brought an action for false imprisonment and intentional infliction of emotional distress against defendants William Lynch, an Illinois Gaming Board agent, Harrah's Casino, d/b/a Joliet Harrah's Casino (Harrah's), and Jason Glickman, the security supervisor at Harrah's. The action arose out of an incident in which Lynch briefly handcuffed and detained Grainger and turned him over to the Joliet police after Grainger presented what appeared to be an altered driver's license to Harrah's personnel when attempting to collect a jackpot he had won at a slot machine.

¶ 2     Lynch moved for summary judgment on the grounds that: (1) the action against him was barred by sovereign immunity; and (2) Grainger failed to present any evidence suggesting that Lynch acted without probable cause or caused Grainger severe emotional distress. Defendants Glickman and Harrah's also moved for summary judgment, arguing that there was no evidence that Glickman restrained or arrested Grainger or procured his arrest. Glickman and Harrah's maintained that Glickman had merely reported a suspicious looking driver's license to Lynch, who took control of the investigation and independently decided to restrain Grainger. Glickman and Harrah's also argued that Grainger had failed to present any evidence suggesting that: (1) Glickman lacked probable cause to inquire into whether Grainger's license had been altered; (2) Glickman's behavior was "extreme and outrageous"; (3) Glickman knew or should have known that his actions would inflict severe emotional distress; or (4) Grainger suffered extreme emotional distress.

¶ 3     The trial court granted summary judgment in favor of Lynch on sovereign immunity grounds and denied Glickman and Harrah's motion for summary judgment. The case was tried against defendants Glickman and Harrah's on Grainger's false imprisonment claim only. The jury returned a verdict in favor of the defendants.

¶ 4        Grainger appeals the trial court's grant of summary judgment in favor of Lynch on sovereign immunity grounds. He also appeals the trial court's orders entering judgment in favor of Glickman and Harrah's and denying his motion for a new trial, arguing that the trial court caused severe prejudice to Grainger by erroneously refusing a jury instruction that Grainger had tendered on probable cause. Specifically, Grainger argues that the jury should have been instructed that, in order to have probable cause to restrain someone, security personnel must pursue "reasonable avenues of investigation."

¶ 5                                                    FACTS

¶ 6        The following facts are drawn from the trial testimony and other evidence submitted by the parties. Grainger is a corrections officer specialist who has worked for the Federal Bureau of Prisons for 16 years. He lives in Georgia. In April of 2009, Grainger was booked for a three-night stay at Harrah's Casino Hotel in Joliet. The hotel stay was complimentary because Grainger had accumulated points on his Harrah's "Player's card" by playing slot machines at several Harrah's casinos in various states. On April 19, 2009, after checking into the Harrah's Joliet hotel, Grainger played the dollar slots in the casino for approximately 15 minutes. While playing, Grainger used his Harrah's Player's card, which had his name and picture on it.

¶ 7        While his Harrah's Player's card was in a slot machine, Grainger won a $1,400 jackpot. For tax-reporting purposes, Illinois Gaming Board policy requires a person who wins a jackpot of more than $1,200 to present state or federal identification in order to collect his or her winnings. When the slot host approached Grainger and asked him to provide identification, Grainger produced his valid Georgia driver's license, which had his picture on it. The slot host told the casino operations manager that she thought that Grainger's driver's license looked altered. The casino operations manager agreed and alerted Glickman, who was the security supervisor at Harrah's.

¶ 8        Glickman approached Grainger and asked to see a valid identification. Grainger again produced his Georgia driver's license. After viewing the license, Glickman thought it looked "suspicious" because it appeared to be altered. Glickman did not run Grainger's Player's card (which had Grainger's picture in the system) or check Grainger's "points" on the card. Nor did he use any other database to investigate Grainger's identity. Glickman did not investigate where Grainger was staying overnight or order the slot host or the casino operations manager to investigate anything.

¶ 9        Pursuant to Harrah's procedure, Glickman reported the matter to Illinois Gaming Board Special Agent Lynch, who is a licensed Illinois police officer. The State of Illinois regulates casinos and mandates that the Illinois Gaming Board respond to criminal or suspected criminal activity occurring at a casino. As an Illinois Gaming Board agent, Lynch's duties included monitoring and regulating Harrah's in accordance with the Riverboat Gambling Act (230 ILCS 10/1 *et seq.* (West 2008)). Lynch testified that: (1) he was also responsible for deterring crime and cheating in the casino; (2) he reported any violation of law to the Illinois Gaming Board; and (3) he was authorized to make arrests at the casino under the Riverboat Gambling Act and under Illinois Gaming Board protocols.

¶ 10       Lynch told Glickman to bring him Grainger's driver's license, and Glickman did so. When he examined the photograph on the license, Lynch thought that it looked altered because the neck did not match the head. Specifically, the neck appeared to be very thick and protruded past the head. Lynch thought that one picture had been superimposed over another. In his nine

years of experience, Lynch had never seen another picture like it. Lynch checked the license through the Law Enforcement Agency Data System, a law enforcement database. The personal information on Grainger's license "checked out," but there was no photograph in the database to compare with the photograph on the license. Lynch admitted that, for the license to be fraudulent, Grainger would have had to have used the license of a different person that matched his height, weight, and race, since Grainger matched all of the identifying information on the license.

¶ 11 Lynch and Glickman then approached Grainger, who had been waiting by the slot machines on the casino floor. Lynch took out his badge and identified himself to Grainger. After looking at Grainger, Lynch thought that Grainger's appearance did not match the picture on the license because Grainger's "neck wasn't protruding like the one on the license." To Lynch, "[t]he face looked the same but the neck was totally different." Grainger produced another piece of identification. Grainger later testified that he produced his work identification as a federal corrections officer, which had his picture on it. Lynch did not look at this identification. Neither Lynch nor any Harrah's employee asked Grainger for any other identification, and Lynch did not ask Grainger where he was staying or whether he was a special Harrah's player. Lynch decided to detain Grainger and turn him over to the Joliet police department.

¶ 12 Because Grainger was "very big and strong," and because, in Lynch's experience, individuals become hostile if they think they are not going to be paid their jackpot, Lynch decided to secure Grainger by handcuffing him and escorting him to a detention room, where Grainger was handcuffed to a bench. Grainger was cooperative at all times.

¶ 13 At Lynch's direction, Harrah's called the Joliet police. Joliet police officer Haiduke arrived at Harrah's approximately nine minutes after Grainger was first handcuffed. Lynch informed Haiduke of a possible fake or altered license. Haiduke agreed that the license appeared altered and decided to transport Grainger to the Joliet police department for further inquiry. Haiduke recuffed Grainger with his own handcuffs, put Grainger in his squad car, and took him to the police station.

¶ 14 At the police station, Haiduke ran Grainger's identification and "everything came back valid." Haiduke then discussed the matter with his supervisor, Sergeant Nicodemos. Like Haiduke, Nicodemos initially thought that the picture on the driver's license looked "peculiar," but, after examining Grainger, he concluded that Grainger's neck resembled the license picture. Nicodemos and Haiduke returned Grainger to Harrah's, uncuffed, at 1:06 a.m., approximately 42 minutes after Grainger was handcuffed by Lynch and less than an hour from the time Grainger was first approached by Glickman.

¶ 15 Grainger collected his jackpot, left Harrah's, and went to his brother's house, which was about a mile from the casino. Later that night, Grainger returned to Harrah's and spent the rest of the night in his Harrah's hotel room. He checked out later that day, traveled to Hammond, Indiana, checked into a Harrah's-affiliated hotel for the night, and gambled at the nearby Harrah's casino.

¶ 16 Grainger sued Lynch, Glickman, and Harrah's in the circuit court of Will County alleging false imprisonment (count I) and intentional infliction of emotional distress (count II). In each count, Grainger sought compensatory damages in excess of $50,000 against all of the defendants (jointly and severally), punitive damages in excess of $50,000 against each defendant, costs, attorney fees, and "whatever additional relief the trial court deemed just and

equitable." He also filed a verified complaint against the State of Illinois and the Illinois Gaming Board in the Illinois Court of Claims seeking compensatory damages arising out of the same incident. The trial court granted summary judgment to Lynch on sovereign immunity grounds but denied Glickman and Harrah's motion for summary judgment.

¶ 17    The matter proceeded to trial against Glickman and Harrah's on Grainger's false imprisonment claim. Grainger called Lynch as an adverse witness during his case-in-chief. During his trial testimony, Lynch admitted that: (1) the more information he has, the better decisions he can make as to probable cause; (2) in determining that he had probable cause to detain Grainger, the only investigation that Lynch conducted was determining that Grainger's license was valid, that Grainger matched the information on the license, and that Grainger did not resemble the picture on the license.

¶ 18    Glickman testified that, when he interacted with Grainger, he was acting as "[p]rivate citizen security," not as a police officer, and that he had the same rights to arrest or detain someone as "anyone else." Glickman stated that, although he had a "suspicion" that Grainger had submitted a false license (which justified further investigation), he never thought that there was probable cause to believe that Grainger had committed a crime. Glickman also confirmed that everything that occurred after he went to Lynch was "solely done and decided" by Lynch.

¶ 19    After the evidence was presented, Grainger proposed a nonpattern jury instruction stating: "To have 'probable cause' security personnel must pursue 'reasonable avenues of investigation.' " Grainger cited *Kincaid v. Ames Department Stores, Inc.*, 283 Ill. App. 3d 555 (1996), as authority for this proposed instruction. The trial court refused the instruction.

¶ 20    The jury returned a defense verdict, and the trial court entered judgment on the verdict. Grainger then filed a motion for a new trial, which the trial court denied. This appeal followed.

¶ 21                                ANALYSIS
¶ 22                          1. Sovereign Immunity
¶ 23    Grainger argues that the trial court erred in granting Lynch's motion for summary judgment on sovereign immunity grounds and in ruling that it did not have jurisdiction over Grainger's claims against Lynch.[1] We review the trial court's grant of summary judgment on this basis *de novo. Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 27.

¶ 24    In the Illinois Constitution of 1970, this state abolished the defense of sovereign immunity "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, § 4. In response, the legislature enacted the State Lawsuit Immunity Act (Immunity Act) (745 ILCS 5/0.01 *et seq.* (West 2008)). Section 1 of the Immunity Act (745 ILCS 5/1 (West 2008)) provides that "the State of Illinois shall not be made a defendant or party in any court" except as provided by the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2008)) or the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2008)). In the Court of Claims Act, the legislature provided that the Court of Claims has exclusive jurisdiction over "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, *** provided, that an award for damages in a case sounding in tort, other than certain cases involving the operation of a State vehicle

---

[1]The trial court ruled that Grainger's claims against Lynch could only be filed in the Illinois Court of Claims.

described in this paragraph, shall not exceed the sum of $100,000 to or for the benefit of any claimant." 705 ILCS 505/8(d) (West 2008). "This language is clear and unambiguous; all claims against the state for damages sounding in tort must be brought in the Court of Claims–no other tribunal, including our circuit courts, has jurisdiction of any such claim." *Fritz v. Johnston*, 209 Ill. 2d 302, 310 (2004). The question, therefore, is whether the instant tort case raises "claims against the State."

¶ 25    "The determination of whether an action is in fact a suit against the State turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties." *Currie v. Lao*, 148 Ill. 2d 151, 158 (1992). "An action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Id.*

¶ 26    The determination whether an action against a state employee ought to be characterized as an action against the state does not depend simply upon whether the employee was acting within the scope of his employment when he committed the act in question. *Fritz*, 209 Ill. 2d at 310. Rather, the applicability of sovereign immunity turns on the "source of the duty" that the defendant is alleged to have breached. (Emphasis omitted.) *Id.* (citing *Currie*, 148 Ill. 2d at 159). Where the duty is imposed "solely by virtue of the individual's employment with the state," sovereign immunity attaches and exclusive jurisdiction lies in the Court of Claims. *Fritz*, 209 Ill. 2d at 310-11; *Currie*, 148 Ill. 2d at 159. However, if the duty exists independently of state employment, the individual is subject to suit in circuit court. *Fritz*, 209 Ill. 2d at 311. Thus, "where an employee of the State, although acting within the scope of his employment, is charged with breaching a duty that arose independently of his State employment, a suit against him will not be shielded by sovereign immunity." *Currie*, 148 Ill. 2d at 159; see also *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990) ("[s]overeign immunity affords no protection, *** when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority"). However, when a state employee is charged with breaching a statutory duty which *proscribes his conduct as a state employee* (and not a statutory duty that applies to the public generally), sovereign immunity applies. See *Fritz*, 209 Ill. 2d at 314. "[T]he critical question is the source of the duty the employee is alleged to have violated–and specifically, whether that duty exists solely by virtue of the defendant's state employment." *Id.*; see also *Currie*, 148 Ill. 2d at 159; *Welch v. Illinois Supreme Court*, 322 Ill. App. 3d 345, 352-53 (2001) (ruling that "[a] State employee's violation of policy, regulation, or even statute does not necessarily avert the application of sovereign immunity," and that "[t]he relevant question for sovereign immunity purposes" is "whether the charged acts of [a state employee] arose out of his breach of a duty that is imposed on him solely by virtue of his State employment or whether he is charged with breaching a duty that arose independently of his State employment" (emphases omitted)).

¶ 27    In this case, Grainger alleged that Lynch committed a false imprisonment by detaining him without having probable cause to believe a criminal offense had been committed. At the time Lynch detained Grainger, he was performing his duties as an Illinois Gaming Board agent at Harrah's. At that time, the Riverboat Gambling Act authorized the Illinois Gaming Board to "supervise all gambling operations governed by this Act" (230 ILCS 10/5(c) (West 2008)) and to execute the Act's provisions by, *inter alia*, employing investigators "exercising the powers of a peace officer." 230 ILCS 10/5(e) (West 2008). It is undisputed that Lynch was an Illinois

Gaming Board agent who was authorized to enforce the Riverboat Gambling Act's requirements by conducting investigations and by making arrests at the casino when he had reasonable grounds to believe that a person had committed a felony or some other serious offense. Every action that Lynch took in this case arose from his job duties as an Illinois Gaming Board agent. Lynch was called to investigate Grainger's driver's license in his capacity as an Illinois Gaming Board agent. His subsequent investigation of Grainger and his decision to detain Grainger and turn him over to the Joliet police were all done in the exercise of his duties as a statutorily authorized peace officer charged with enforcing the Riverboat Gambling Act. Those are the very acts that form the basis of Grainger's complaint. Thus, because the duties Lynch is alleged to have breached in this case arose solely from his state employment, sovereign immunity applies. See, *e.g.*, *Fritz*, 209 Ill. 2d at 314; *Welch*, 322 Ill. App. 3d at 352-53; *Grimes v. Saikley*, 388 Ill. App. 3d 802, 815-16 (2009) (holding that claims which arose solely out of actions imposed by appointment as public administrator in closing estate were barred by sovereign immunity); *Postich v. Henrichs*, 267 Ill. App. 3d 236, 244 (1994) (applying sovereign immunity to bar claim against police officer involved in automobile accident while responding to an emergency); *Campbell v. White*, 207 Ill. App. 3d 541 (1991) (sovereign immunity applied where state law enforcement officer negligently caused the death of a suspect during a high-speed chase of the suspect).

¶ 28    Grainger argues that: (1) section 107-2(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/107-2(c) (West 2008)) (the Code) provides that a peace officer may make an arrest only when he has "reasonable grounds to believe that the person is committing or has committed an offense" (*id.*); (2) Lynch, who was acting as a peace officer at the time he detained Grainger, violated this provision by detaining Grainger without probable cause;[2] and (3) the duty to detain a subject only upon probable cause applies to all peace officers (state or municipal) and does not arise out of an officer's state employment. Therefore, Grainger argues, Lynch's violation of this statutory duty is not protected by sovereign immunity. Grainger analogizes this situation to cases wherein courts have held that certain professionals employed by the state, such as public defenders and doctors at state hospitals, are not protected by sovereign immunity when they breach a professional duty owed by every member of their profession. See, *e.g.*, *Jinkins v. Lee*, 209 Ill. 2d 320, 333 (2004); *Sellers v. Rudert*, 395 Ill. App. 3d 1041 (2009); *Loman v. Freeman*, 375 Ill. App. 3d 445 (2006). In these cases, courts have held that "[b]ecause a professional duty derives from the duty of care imposed by one's status as a professional, this is an independent duty that does not arise solely from one's [state] employment and, thus, a breach is not protected by sovereign immunity." *Brandon v. Bonell*, 368 Ill. App. 3d 492, 506 (2006).

¶ 29    We find these cases inapposite. As noted above, Lynch's authority to detain Grainger arose entirely from his status as an agent of the Illinois Gaming Board, and the acts that form the

---

[2]Grainger also argues that Lynch violated section 107-14 of the Code, which provides that a police officer may, under certain circumstances, temporarily stop and question a suspect "in the vicinity of where the person was stopped." 725 ILCS 5/107-14 (West 2008). Grainger notes that Lynch admitted that he violated this provision by questioning Grainger in the Harrah's detention room, away from where Grainger was initially stopped. However, this is a red herring because this alleged violation has nothing to do with the substance of Grainger's claim against Lynch. Grainger's claim is based on Lynch's alleged detention of Grainger without probable cause, not his questioning of Grainger in any particular location.

basis of Grainger's complaint were directly related to Lynch's state employment. Moreover, a judgment in this case could affect the Illinois Gaming Board's ability to enforce the requirements of the Riverboat Gambling Act. For all these reasons, the duty which Lynch is alleged to have breached is intimately connected to Lynch's state employment. See, *e.g.*, *Carmody v. Thompson*, 2012 IL App (4th) 120202, ¶ 30. Further, Lynch has cited no cases suggesting that a police officer's duty to arrest based on probable cause arises from his "professional" status as a police officer. Nor have we found any such cases.

¶ 30     We find that this case is more like *Carmody* than the "professional duty" cases cited by Grainger. In *Carmody*, a former employee of the University of Illinois sued his former supervisor for making allegedly false and defamatory statements in the termination letter he sent to the employee. Our appellate court held that sovereign immunity applied because: (1) "drafting the letter was related to the defendant's duties as an assistant dean and director of the college of engineering"; (2) the plaintiff's suit "could potentially affect state policies and control state actions"; and (3) "[a] judgment for [the] plaintiff could also directly influence how persons in positions similar to defendant's position handle personnel matters in the future." *Id.* As a result, our appellate court held that "the duty plaintiff alleged defendant breached was not owed to plaintiff independent of his state law employment." Sovereign immunity applies in this case for the same reasons. A contrary ruling would interfere with the Illinois Gaming Board's ability to enforce the Riverboat Gambling Act and with its agents' ability to perform their jobs as prescribed by state law.[3]

¶ 31     Grainger also argues that sovereign immunity does not apply because, in detaining Grainger without probable cause, Lynch acted beyond the scope of his authority through wrongful acts and was therefore not exercising his normal and official job functions. See *Jinkins*, 209 Ill. 2d at 330 (ruling that an action against a state employee is considered to be against the state only when: (1) there are no allegations that an employee or agent of the state acted beyond his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of state employment; and (3) the complained-of actions involve matters ordinarily within that employee's normal and official functions of the state).

¶ 32     We disagree. As an initial matter, Grainger did not raise this argument in his response to Lynch's motion for summary judgment. (Grainger's briefing on summary judgment was

---

[3] Accordingly, even if the duty at issue in this case arose independently of Lynch's state employment in some sense, Lynch's detention of Grainger would still be subject to sovereign immunity. Illinois courts have carved out an exception to the "source of duty" rule where a lawsuit challenging a state employee's actions could potentially affect state policies and control state actions. See, *e.g.*, *Currie*, 148 Ill. 2d at 160; *Brandon*, 368 Ill. App. 3d at 506. These courts have held that "[w]hen the conduct related to a state employee's independent duty is unique to his state employment such that a suit challenging this conduct could affect state policies or control its actions, then sovereign immunity will bar a suit against the state employee." *Brandon*, 368 Ill. App. 3d at 506; see also *Currie*, 148 Ill. 2d at 160. For example, where a police officer was responding to an emergency call by driving south across westbound traffic, this manner of driving was considered unique to her state employment, and sovereign immunity applied despite her independent duty to drive with reasonable care. *Kawaguchi v. Gainer*, 361 Ill. App. 3d 229, 244 (2005). Here, Lynch's conduct in investigating and detaining Grainger was unique to his employment and, as noted, Grainger's suit could affect state policies or control state actions.

focused almost entirely on the "source of duty" argument.) Moreover, Grainger's suggestion that Lynch was not "exercising his normal and official job functions" is scarcely developed in his appellate briefs. For these reasons, Grainger has forfeited this argument. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37; *Clifford v. Wharton Business Group, L.L.C.*, 353 Ill. App. 3d 34, 43 n.4 (2004).

¶ 33    However, even if we were to address Grainger's new argument, we would reject it on the merits. Contrary to Grainger's suggestion, Lynch did not act beyond the scope of his authority by detaining Grainger, even assuming *arguendo* that he did so without probable cause. See *Welch*, 322 Ill. App. 3d at 352 (ruling that "[a] State employee's violation of [a] *** statute does not necessarily avert the application of sovereign immunity," and holding that "[r]egardless of whether [an Illinois Supreme Court Justice] had violated [a supreme court rule], it does not necessarily mean that he acted beyond the 'scope of his authority' and does not, by itself, preclude the application of sovereign immunity"); *Campbell*, 207 Ill. App. 3d at 551 ("[e]ven assuming plaintiff correctly alleges [defendant police officer's] acts violate the statute and regulations pertaining to the use of oscillating lights and sirens, defendant can act negligently or wilfully and wantonly without exceeding the scope of his authority").

¶ 34    Moreover, a state employee does not act outside the scope of his authority (thereby precluding the application of sovereign immunity) merely by committing a tort, such as false imprisonment. *Shirley v. Harmon*, 405 Ill. App. 3d 86, 96 (2010); *Jackson v. Alverez*, 358 Ill. App. 3d 555, 561 (2005). "[N]o state employee has the authority to commit a tort, and if sovereign immunity could be defeated by alleging a tort, sovereign immunity for tort actions could not exist." *Shirley*, 405 Ill. App. 3d at 96. " '[B]ecause sovereign immunity presupposes the possibility of a legal wrong by a state employee [citation], and legal wrongs are, *per se*, unauthorized, the relevant question cannot be whether the employee had authority to commit the legal wrong.' " *Id.* (quoting *Jackson*, 358 Ill. App. 3d at 561); see also *Welch*, 322 Ill. App. 3d at 352. To hold otherwise would be to "confuse[ ] the jurisdictional question sovereign immunity presents with the merits of [the plaintiff's] claim." *Welch*, 322 Ill. App. 3d at 352.

¶ 35    In any event, there can be no doubt that the actions about which Grainger complains in this case involved matters ordinarily within Lynch's normal and official functions. As noted, Lynch's duties included investigating and deterring crime at riverboat casinos, arresting those suspected of committing crimes, and reporting such crimes to the Illinois Gaming Board. It is a felony to present a fraudulent state identification card. 15 ILCS 335/14B (West 2008). Thus, Lynch's investigation and arrest of Grainger for apparently submitting a false state identification were part of Lynch's normal and official functions.

¶ 36                              2. Jury Instruction on Probable Cause

¶ 37    Grainger also argues that the trial court committed reversible error by refusing Grainger's proposed jury instruction on probable cause. "The trial court has discretion to determine which instructions to give the jury and that determination will not be disturbed absent an abuse of that discretion." *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273 (2002); see also *Luye v. Schopper*, 348 Ill. App. 3d 767, 773 (2004) (ruling that "the trial court has the discretion to determine if a particular jury instruction is applicable, supported by evidence in the record, and an accurate statement of the law"). The standard for deciding whether a trial court abused its discretion is "whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles." *Schultz*, 201 Ill.

2d at 273-74. A reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant. *Id.* at 274; see also *Stift v. Lizzadro*, 362 Ill. App. 3d 1019, 1026 (2005) ("A new trial will be granted based on a trial court's refusal to give a tendered instruction only when the refusal amounts to a serious prejudice to a party's right to a fair trial." (Internal quotation marks omitted.)).

¶ 38    Grainger argues that the trial court abused its discretion by refusing his tendered jury instruction No. 4 (a nonpattern instruction), which read: "To have 'probable cause' security personnel must pursue 'reasonable avenues of investigation.' " We disagree. The elements of a cause of action for false imprisonment are: (1) that the plaintiff was restrained or arrested by the defendant; and (2) that the defendant acted without reasonable grounds (*i.e.*, without probable cause) to believe that an offense was committed by the plaintiff. *Poris*, 2013 IL 113907, ¶¶ 61-62. "Probable cause is an absolute bar to a claim of false imprisonment." *Id.* ¶ 63. For purposes of state-law false imprisonment claims, "probable cause" is defined as "a state of facts which, if known, would lead a person of ordinary caution and prudence to believe or entertain a strong and honest suspicion that the person arrested is guilty." *Poris*, 2013 IL 113907, ¶ 63 (citing *Lappin v. Costello*, 232 Ill. App. 3d 1033, 1042 (1992)). This definition does not include the requirement of a "reasonable investigation." Our supreme court has never held or implied that a defendant in a false imprisonment case may establish that he had probable cause to detain the plaintiff only if he shows that he conducted a reasonable investigation before detaining the plaintiff. To the contrary, the relevant authorities suggest that, if the defendant knew facts which would lead a person of ordinary caution and prudence to entertain a strong and honest suspicion that the plaintiff is guilty of an offense, then the defendant has probable cause to detain the plaintiff, regardless of the extent of his prior investigation. See, *e.g.*, *Poris*, 2013 IL 113907, ¶ 63.

¶ 39    The instructions that the jury received in this case defined probable cause exactly as our supreme court defined it in *Poris*.[4] Moreover, the trial court properly instructed the jury on the elements of a claim for false imprisonment and the relevant defenses thereto. Grainger does not argue otherwise. Accordingly, the instructions given by the trial court fairly, fully, and comprehensively apprised the jury of the relevant legal principles pertaining to probable cause.[5] The court's refusal to give the instruction tendered by Grainger neither misled the jury nor prejudiced Grainger. Thus, there was no abuse of discretion by the trial court.

¶ 40    Grainger maintains that our appellate court's decision in *Kincaid* suggests that his proposed "reasonable investigation" instruction was required in this case. We disagree. As Grainger notes, *Kincaid* provides that a defendant has probable cause to arrest (thereby defeating a plaintiff's claim for false arrest) "if, at the time of the arrest, *after pursuing reasonable avenues of investigation*, the defendant knew facts that would have led a person of

---

[4]The probable cause instruction in this case recited the *Poris* definition verbatim with one minor, legally immaterial change: it substituted the word "guilty" for the phase "committed the offense charged."

[5]Grainger argues that a special definition of probable cause applied in this case because Glickman was a private security guard, not a police officer. We disagree. In *Poris*, our supreme court applied the standard definition of probable cause, and *Poris* involved an alleged false imprisonment by a security officer employed by a private property association. *Poris*, 2013 IL 113907, ¶¶ 15, 19, 64-65.

ordinary prudence to entertain an honest and strong suspicion that the person arrested was guilty." (Emphasis added.) *Kincaid*, 283 Ill. App. 3d at 564. As authority for this proposition, *Kincaid* cited *Lappin*, 232 Ill. App. 3d at 1042. However, in the text cited, the *Lappin* court was discussing the definition of probable cause "*for purposes of section 1983 unlawful arrest actions*," not for purposes of state-law claims for false imprisonment. (Emphasis added and internal quotation marks omitted.) *Id.* The *Lappin* court noted that, when addressing federal claims brought under 42 U.S.C. § 1983, "[f]ederal courts appear to have imposed a somewhat higher standard of care on law enforcement officials than applies with respect to common law malicious prosecution actions. *** Generally, reasonable avenues of investigation must be pursued [in section 1983 cases]." (Internal quotation marks omitted.) *Lappin*, 232 Ill. App. 3d at 1042 (citing *BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986)). *Lappin* neither holds nor suggests that this higher standard should also apply in false imprisonment cases brought under state common law. If anything, it suggests just the opposite. Accordingly, *Lappin* does not support the plaintiff's argument in this case. To the extent that *Kincaid* suggests that a defendant in a false imprisonment case cannot have probable cause to detain the plaintiff unless he performed a "reasonable investigation" prior to the detention, we decline to follow that decision.

¶ 41                               CONCLUSION

¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court of Will County granting summary judgment to Lynch. We also affirm the jury verdict in favor of Glickman and Harrah's.

¶ 43    Affirmed.