In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2495

CHRISTI TURPIN,

*Plaintiff-Appellant,*

*v.*

JOHN KOROPCHAK, DAVID L. WILSON, and
NANCY MUNDSCHENK,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 07 C 806—**David R. Herndon**, *Chief Judge.*

ARGUED MAY 4, 2009—DECIDED JUNE 5, 2009

Before KANNE and EVANS, *Circuit Judges*, and DOW,
*District Judge.**

EVANS, *Circuit Judge*. The issue in this case is jurisdiction.
Christi Turpin, a former graduate student of Southern
Illinois University (SIU), sued two deans and a professor in

_____

*  The Honorable Robert M. Dow, Jr., United States District Court
Judge for the Northern District of Illinois, sitting by designation.

federal court after they failed to acknowledge that she earned her doctorate. Despite the fact that she sued the defendants in their individual capacities, the district court held that SIU, and therefore the State of Illinois, was the real party in interest. The upshot? The case was dismissed for lack of jurisdiction because suits against the State are the exclusive province of the Illinois Court of Claims. Turpin appeals.

In the winter of 1999, Turpin was wrapping up her Ph.D. in educational psychology. She had completed all her necessary course work and had written what she believed was the final draft of her dissertation.[1] So when March 11 rolled around—the day she was to defend her the-sis—Turpin was cautiously optimistic that this was, at long last, the end of the road. And when she walked out of the committee room she must have been exuberant—her presentation was a success! Or so she thought. We wouldn't be here today if that were the end of the story. The truth is, almost a decade later, Turpin still can't call herself a doctor.

Accepting Turpin's allegations as true—as we must at this stage, *Newell Operating Co. v. Int'l U.A.W.*, 532 F.3d 583, 587 (7th Cir. 2008)—the only reason for this is that one of the committee members (Nancy Mundschenk) and two deans (John Koropchak and David Wilson) have refused to

---

[1] We freely admit to having absolutely no clue as to what her dissertation was all about. Its title—The Link Between Vocational Rehabilitation Counselors Who Utilize Performance Technologies Competencies and the Resulting Impact Upon Their Consumer Outcome—doesn't quite make its content self-evident.

acknowledge Turpin's degree even though they know she earned it. Following her defense, every member of the dissertation committee (Mundschenk included) signed an approval form. All that remained was for the department head to add his signature and to file the form with the records office. According to Turpin, the department head did his part, but the records office dropped the ball—it simply lost the form.

Still, everything went fine until 2003. With a Ph.D. on her resume, Turpin fetched a job working for a school district in St. Louis. Then, four years after she thought she had completed her doctoral program, Turpin learned that SIU had never "posted" the degree. As a result, the school was not willing to confirm to Turpin's employer that she in fact had a Ph.D. Turpin was at a loss; but after contacting Dean Wilson, she thought the problem was solved. Wilson told Turpin's employer that there had been some sort of clerical error and "the degree will be posted in an appropriate manner." Of course, that never happened.

Thinking the problem well behind her, Turpin landed a new job in 2007—complete with a $160,000 salary—working for a commercial construction firm. Quite reasonably, she listed the Ph.D. on her resume. But when her new boss went to verify this fact, Wilson not only proved unhelpful, he flat out said she didn't earn it.[2] When Koropchak said the same thing a few days later, Turpin lost her job. Hoping to get to the bottom of the mess, Turpin put together a meeting in

---

[2]   Again, we note that we are taking Turpin's word for all of this—there may be another side to this story.

October with her dissertation committee. The truth—or one version of it—came out. In a complete about-face, Mundschenk denied signing off on the dissertation and, for the first time, represented that Turpin had revisions to make. Turpin doesn't know what would possess Mundschenk to behave like this, but she is clear about one thing: Mundschenk either knew she was lying or acted in "wanton disregard of the truth." The same goes for Wilson and Koropchak. Wilson knew the truth based on his earlier investigation; bad faith can be inferred on the part of Koropchak because he willfully concealed from the commit-tee members the approval form bearing Mundschenk's signature.

According to SIU's Web site, the vast majority of alumni have a "positive or strongly positive" attitude toward the school. "Why SIU?" *at* http://www.siuc.edu/aboutsiuc/index.html (last visited May 11, 2009). Turpin is one Saluki who begs to differ.[3] Based on the above

---

[3]   The Saluki is SIU's mascot. Renowned for its endurance and beauty, the Saluki is one of the earliest breeds of domesticated dogs. In fact, images of Salukis appear on Egyptian artifacts dating back to 2100 B.C., and their remains have been found in tombs throughout the Upper Nile region. "Saluki" *at* http://en.wikipedia.org/wiki/Saluki (last visited May 11, 2009). So how did this pharaohs' hound end up the mascot for a university in southern Illinois? Well, somewhere along the line southern Illinois gained the nickname "Little Egypt"—perhaps the flood plain along the Mississippi reminded settlers of the fertile Nile Valley—so the Saluki was a natural choice. (Southern Illinois is

(continued...)

allegations, Turpin sued Wilson, Koropchak, and Mundschenk for specific performance (final conferral of her Ph.D.) and damages for breach of duty and tortious interference with a business expectancy. The question for us is not whether Turpin is entitled to the relief she seeks, but whether she is entitled to pursue that relief in federal court.

We review *de novo* the dismissal of a suit for lack of subject-matter jurisdiction. *Newell*, 532 F.3d at 587. The plaintiff bears the burden of establishing that the suit is properly brought in federal court. *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008). Here, the district court determined that it lacked subject-matter jurisdiction because the suit was actually against the State, such that it belonged in the Illinois Court of Claims. We agree.

Where an alleged act of misconduct "'arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment, sovereign immunity will bar maintenance of the action' in any court other than the Illinois Court of Claims." *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002) (quoting *Currie v. Lao*, 148 Ill. 2d 151,

---

[3] (...continued)

also home to a town named Cairo.) And it has served the school well. The Salukis men's basketball team—hailing from the vaunted Missouri Valley Conference—has a storied history. The "Dawgs" captured the nation's attention in 1967 when Walt "Clyde" Frazier led them past Marquette University (and its star, George "Brute Force" Thompson) to win the National Invitation Tournament in Madison Square Garden. More recently, they busted brackets coast to coast with runs to the Sweet Sixteen in the 2002 and 2007 NCAA Tournaments.

159, 592 N.E.2d 977, 980 (1992)); *see also* 705 Ill. Comp. Stat. 505/8(d) (defining the jurisdiction of the Illinois Court of Claims).[4] The question to ask, in other words, is whether the defendant breached a duty owed by all citizens, or whether he breached a duty held uniquely by State employees holding the job at issue. The bookends illustrate the point. Clearly the State is not the real party in interest if a woman sues an off-duty trooper for mugging her on the way home from the grocery store. Everyone has a duty to refrain from such conduct, State troopers no more (or less) than anyone else. On the other hand, the State is assuredly the real party in interest when a university student participating in a school-sponsored sporting event injures herself due to the alleged negligence of the university coaching staff. *See Healy v. Vaupel*, 133 Ill. 2d 295, 549 N.E.2d 1240 (1990). Most cases won't be so clear-cut, of course, but neither is the case we have the trickiest imaginable. The bottom line is this. Wilson, Koropchak, and Mundschenk had the opportunity

---

[4]    There is of course a distinction between a state's immunity from suit in federal court (flowing from the 11th Amendment) and its immunity from liability in all fora (which predates the 11th Amendment and exists by virtue of a state's status as a sovereign entity). *See Stewart v. North Carolina*, 393 F.3d 484, 487-88 (4th Cir. 2005). In this case, however, the distinction isn't too meaningful. If Illinois is the real party in interest, the 11th Amendment precludes litigation in federal court, *Burrus v. State Lottery Comm. of Indiana*, 546 F.3d 417, 419-20 (7th Cir. 2008); *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002); and the same finding means that the case belongs in the Court of Claims pursuant to Illinois' limited waiver of sovereign immunity, *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001).

to block Turpin from obtaining her degree *only* because they were employed by SIU. What they allegedly did couldn't have been pulled off by any old person picked at random. The duties they supposedly breached—to be truthful and fair in Ph.D. evaluations in the case of Mundschenk; to process degrees and report graduate status accurately in the case of Wilson and Koropchak—were held by them only because of where they worked. The fact that we can find a broader parallel duty held by all citizens—to refrain from fraud—doesn't change a thing. If courts were to ignore the specific duty in favor of its more general cousin, the Court of Claims would be a quiet place indeed.

And if there is any doubt as to whether the duty analysis gets us to the right result, there are other factors to consider. Namely, courts should also ask whether the plaintiff alleges "that an agent or employee of the State acted beyond the scope of his authority through wrongful acts," and whether "the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Healy*, 133 Ill. 2d at 309, 549 N.E.2d at 1247 (quoting *Robb v. Sutton*, 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, 272 (Ill. App. Ct. 1986)). Turpin argues that she satisfies the first of these two factors in that the defendants had no authority to deny her the Ph.D. through false representations. That's surely true—the fact that they lacked authority to lie, that is—but it doesn't support the conclusion. When the Illinois courts speak of an act "beyond the scope of authority," they contemplate an employee acting not just in a wrongful *manner*, but sticking his nose in business where it doesn't belong. *Robb*, also involving a dean at SIU, proves the point. The plaintiff brought a claim "purport[ing] to sound in

fraud" when the dean lured him into accepting a job that he "knew or should have known" didn't exist. *Robb*, 147 Ill. App. at 711, 498 N.E.2d at 269. But because it was the dean's job to manage the program at issue (including the recruitment of employees), "[t]he complaint contain[ed] no allegations that the defendant was at all acting outside his authority or in contravention of his official duties." *Id.* at 714, 498 N.E.2d at 271. Rather, the allegations "at least impl[ied] that the defendant, in making the complained-of representations, was acting in an official capacity pursuant to his delegated duties." *Id.* Similarly, although Wilson, Koropchak, and Mundschenk lacked authority to perform their duties in a dishonest *manner*, it was very much their place to determine whether Turpin earned her degree. Likewise—these factors all sort of bleed together—evaluating a dissertation and discerning whether a degree should be conferred are "matters ordinarily within [the defendants'] normal and official functions of the State." It is thus clear that this action is in reality one against the State, and therefore it belongs in the Illinois Court of Claims.[5]

---

[5]   The relief sought also reinforces the conclusion that this action is against the State. If a judgment for the plaintiff "could operate to control the action of the State or subject it to liability, the cause in effect is a suit against the State." *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 187, 470 N.E.2d 1029, 1038 (1984). Turpin wants two things: her degree and damages. Only SIU, an arm of the State, can confer the degree. And though employees of the State may be personally liable in a number of situations, this is

(continued...)

In a last-ditch effort, Turpin tries to defeat this conclusion by invoking the "officer suit" exception. That dog won't hunt. The officer suit exception provides that when an officer of the State commits an unconstitutional act or violates a statute, the suit is not against the State, because the State is presumed not to violate its own constitution or enactments. *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 261, 836 N.E.2d 351, 357 (2005) (quoting *Schwing v. Miles*, 367 Ill. 436, 441-42, 11 N.E.2d 944, 947 (1937)); *see also Smith v. Jones*, 113 Ill. 2d 126, 131, 497 N.E.2d 738, 740 (1986) ("An action against a State official for conduct in his official capacity will withstand a motion to dismiss the complaint on sovereign immunity grounds if the complaint alleges that the official is enforcing an unconstitutional law or violating a law of Illinois and thus acting beyond his authority."). Nothing in Turpin's complaint alleges a violation of the State constitution or a statute, so this exception is off the table.

Turpin may yet prevail in this matter. Her allegations are serious, and she deserves her day in court. Just not in federal court.

The dismissal is AFFIRMED.

---

[5] (...continued)
not one of those cases. If Turpin wins, Illinois will be on the hook for the judgment.