In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3384

CHARLES MURPHY,

*Plaintiff-Appellee,*

*v.*

ROBERT SMITH and GREGORY FULK,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Illinois
No. 3:12-cv-00841-SCW — **Stephen C. Williams**, *Magistrate Judge.*

ARGUED NOVEMBER 3, 2016 — DECIDED DECEMBER 21, 2016

Before BAUER, MANION, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Charles Murphy was an inmate in the Vandalia Correctional Center in Illinois. On July 25, 2011, correctional officers hit Murphy, fracturing part of his eye socket, and left him in a cell without medical attention. Murphy sued under 42 U.S.C. § 1983 and state-law theories. A jury awarded him damages on some of those claims, including some state-law claims, and the district court awarded attorney fees under 42 U.S.C. § 1988. Two of the defendants now

appeal and challenge two aspects of the judgment. They argue
that state-law sovereign immunity bars the state-law claims
and that the Prison Litigation Reform Act requires that 25 per-
cent of the damage award be used to pay the attorney fee
award.

We affirm on the sovereign immunity defense. The Illinois
doctrine of sovereign immunity does not apply to state-law
claims against a state official or employee who has violated
statutory or constitutional law. See *Leetaru v. Board of Trustees
of University of Illinois*, 32 N.E.3d 583 (Ill. 2015). Murphy al-
leged and ultimately proved such violations here. On the at-
torney fee issue, however, we reverse. Under 42 U.S.C.
§ 1997e(d), the attorney fee award must first be satisfied from
up to 25 percent of the damage award, and the district court
does not have discretion to reduce that maximum percentage.
We remand for entry of a modified judgment.

I.   *Factual and Procedural Background*

We recount the facts in the light reasonably most favorable
to the verdict, which defendants do not challenge on the mer-
its. On July 25, 2011, plaintiff Charles Murphy was a prisoner
at the Vandalia Correctional Center. His assigned seat at
mealtime that day had food and water on it. When he re-
ported the mess, Correctional Officer Robert Smith first told
him to clean it up himself and later told Murphy to leave the
dining area. A different officer handcuffed Murphy, and Of-
ficer Smith escorted him to a segregation building. When they
got there, a third officer asked Murphy what unit he normally
stayed in, but Murphy ignored him. Officer Smith began mov-
ing his finger in and out of Murphy's ear, while asking Mur-
phy if he was deaf and repeating the phrase "you can't hear,

you can't hear." While this was happening, Lieutenant Gregory Fulk entered the building and saw what was happening.

Now escorted by three officers, Murphy was taken further into the segregation unit. Murphy did not struggle with the officers as they walked, although he taunted Officer Smith, promising what would happen the next time he "ain't got no handcuffs on." Hearing that, Officer Smith hit Murphy in the eye and then applied a choke hold with his arm around Murphy's throat. Murphy lost consciousness. When he came to, Lieutenant Fulk and Officer Smith were pushing him into a cell. With his hands still cuffed behind his back, Murphy fell face-first into the cell and hit his head on its metal toilet. The officers took off his clothes and handcuffs and left without having checked his condition.

Thirty or forty minutes later, a nurse came to see Murphy, who was ultimately sent to a hospital. His orbital rim—part of his eye socket—had been crushed and needed surgery. He had that surgery but did not recover completely. As of January 2015, his vision remained doubled and blurred.

In July 2012, Murphy filed suit in the Southern District of Illinois. After two rounds of complaint amendments and a partial grant of summary judgment for defendants, the case was tried to a jury. The jury found for plaintiff Murphy on four claims against two defendants—Lieutenant Fulk and Officer Smith, the appellants here. The jury found Officer Smith liable on two claims of state-law battery and one federal claim of unconstitutional use of force under the Eighth Amendment. The jury also found Lieutenant Fulk liable on a federal Eighth Amendment claim of deliberate indifference to a serious medical need. All told, the jury awarded $241,001 in compensatory and punitive damages against Officer Smith and

$168,750 against Lieutenant Fulk. The district court reduced the combined award to a total of $307,733.82. That reduction is not at issue in this appeal. The district court also awarded attorney fees and ordered that 10 percent of the damages awarded be put toward paying those fees. Officer Smith and Lieutenant Fulk have appealed.

## II. *Sovereign Immunity*

The defendants argue first that state-law sovereign immunity bars Murphy's state-law claims. The district court found, and Murphy contends on appeal, that defendants waived their state-law sovereign immunity defense. We find no waiver but find that state-law sovereign immunity does not shield these defendants from liability.

### A. *Sovereign Immunity in Illinois*

Illinois is protected against civil suits in federal court by two relevant doctrines. First, the "Eleventh Amendment immunizes unconsenting states from suit in federal court." *Benning v. Board of Regents of Regency Universities*, 928 F.2d 775, 777 (7th Cir. 1991); see also *Alden v. Maine*, 527 U.S. 706, 712–13 (1999) (explaining broader concept of sovereign immunity for which "'Eleventh Amendment immunity … is convenient shorthand"). Second, an Illinois statute provides, with exceptions not relevant here, that "the State of Illinois shall not be made a defendant or party in any court." 745 Ill. Comp. Stat. 5/1. Under the *Erie Railroad* doctrine, that statute governs claims in federal court arising under state law. *Benning*, 928 F.2d at 777, citing *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938). While both doctrines are often referred to as "sovereign immunity," they are not the same. See, e.g., *Beaulieu v. Vermont*, 807 F.3d 478, 485–86 (2d Cir. 2015) (distinguishing between

Eleventh Amendment immunity and broader state sovereign immunity under Vermont law). As we explain below, important differences between the federal and state doctrines are decisive in this case.

B.  *Waiver*

Before addressing the merits of the state-law sovereign immunity defense, we first address plaintiff Murphy's argument that defendants waived the defense. "[S]overeign immunity is a waivable affirmative defense." *Park v. Indiana University School of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012) (Eleventh Amendment), citing *Board of Regents of University of Wisconsin System v. Phoenix International Software, Inc.*, 653 F.3d 448, 463 (7th Cir. 2011); see also *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 624 (2002) (state's voluntary removal to federal court waived Eleventh Amendment immunity). If a state does not raise the immunity defense, "a court can ignore it." *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 389 (1998). Because the defendants never relied and still do not rely on Eleventh Amendment immunity, they waived that defense. See *Park*, 692 F.3d at 830 (finding waiver where the state "never once raised the issue ... before the district court" and declined to raise the issue "even when prompted by this court at argument").[1]

---

[1] Like the parties, we rely on Eleventh Amendment case law to address waiver. This is our usual approach under the *Erie* doctrine because procedural issues are governed by federal law in federal courts, and waiver is generally treated as procedural. See *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1122–23 (7th Cir. 1998). Even if Illinois law governed the waiver issue, there would be no waiver. Illinois appears to permit sovereign immunity waivers only by statute, not by litigation conduct. See *Township of Jubilee v. State*, 960 N.E.2d 550, 555 (Ill. 2011) ("[E]fforts by legal

State-law sovereign immunity, however, is a defense the defendants raised at least five times: in their answer, in the final pre-trial conference, in the jury instruction conference, in the defendants' post-trial motion, and on appeal. Those references were explicitly to state-law sovereign immunity. The answer, for example, claimed protection under "statutory sovereign immunity," and in both the post-trial motion and the briefs before this court, the defendants relied on the Illinois State Lawsuit Immunity Act.

Plaintiff Murphy has not cited nor have we found any comparable case finding a waiver of a sovereign immunity defense. Cf. *Board of Regents*, 653 F.3d at 467 (finding waiver where state filed suit in federal district court); *Hill v. Blind Industries & Services of Maryland*, 179 F.3d 754, 756 (9th Cir. 1999) (finding waiver when defendant "participat[ed] in extensive pre-trial activities and wait[ed] until the first day of trial before objecting ... on Eleventh Amendment grounds"). Other circuits hold that equal or less robust efforts to raise the immunity defense do not waive it. See, e.g., *Union Pacific Railroad Co. v. Louisiana Public Service Comm'n*, 662 F.3d 336, 339–40 (5th Cir. 2011) (no waiver when defendant raised issue for first time on appeal, after prevailing on a motion for summary judgment on the merits); *Ashker v. California Dep't of Corrections*, 112 F.3d 392, 394 (9th Cir. 1997) (no waiver when defendants raised issue "in their answer and pretrial statement ...

---

counsel for the State to defend itself ... will not result in a waiver or forfeiture of the State's statutory immunity. That is so because only the legislature itself can determine where and when claims against the state will be allowed."), citing *People ex rel. Manning v. Nickerson*, 702 N.E.2d 1278, 1280 (Ill. 1998).

and … in their briefs filed in this court"). We reach the same conclusion here.

Plaintiff Murphy relies on the defendants' apparent willingness to defend this case on the merits. See *Neinast v. Texas*, 217 F.3d 275, 279 (5th Cir. 2000) ("Courts have found waiver … where the state … evidenced an intent to defend the suit against it on the merits."). But in this case the significance of that willingness is at best equivocal. Both the defendants and the district court seemed at times to blend the state-law immunity question with the merits of plaintiff's claims. For example, the district court said that sovereign immunity did not shield the defendants because the jury, in ruling on the battery claim, necessarily determined that they acted outside their authority. *Murphy v. Smith*, No. 3:12-cv-00841-SCW, slip op. at 17–18 (S.D. Ill. Sept. 25, 2015).

That blending would be confusing under federal immunity law, whether under the Eleventh Amendment or doctrines of absolute immunity. As we explain below, though, the blending of state-law immunity and the merits under Illinois law accurately reflects state law. When a plaintiff sues a state official or employee, the Illinois case law links state-law immunity to the merits. If a plaintiff adequately alleges and ultimately proves that an Illinois official violated a statute or the Constitution, Illinois courts hold that the immunity statute does not apply to claims against the individual official. Because of that linkage of immunity to the merits, the defense of the case on the merits is quite consistent with defendants' assertion of state-law sovereign immunity.

C.  *Illinois Sovereign Immunity for Individual Employees*

The Illinois sovereign immunity statute protects the State against being "made a defendant or party in any court." 745 Ill. Comp. Stat. 5/1. Murphy argues that he has not sued the State of Illinois but only Illinois state employees. Whether the statute covers such state-law claims is a matter of state law. Our role is to decide questions of state law as we predict the state supreme court would decide them. E.g., *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011) ("When interpreting state law, a federal court's task is to determine how the state's highest court would rule."); *Barger v. State of Indiana*, 991 F.2d 394, 396 (7th Cir. 1993) ("State courts are the final arbiters of state law.").

Naming state employees as defendants would be too simple an evasion of the statute, which "cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *Sass v. Kramer*, 381 N.E.2d 975, 977 (Ill. 1978). A substantial body of Illinois case law addresses when and under what circumstances the immunity statute applies to claims against state employees. See *Benning*, 928 F.2d at 779–80.

A claim against a state official or employee is a claim against the state when

> "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of

> State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State."

*Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990), quoting *Robb v. Sutton*, 498 N.E.2d 267, 272 (Ill. App. 1986). That analysis can be a difficult one, and the state cases guiding it have "not always been consistent." *Leetaru v. Board of Trustees of University of Illinois*, 32 N.E.3d 583, 602 (Ill. 2015) (Burke, J., dissenting). Compare *Healy*, 549 N.E.2d at 313 (applying immunity in part because the "relationship between the plaintiff and the defendants would not have had a source outside the employment status of the defendants"), with *Jinkins v. Lee*, 807 N.E.2d 411, 420 (Ill. 2004) (rejecting a "but-for" state employment immunity analysis).

This case is governed by an important exception to sovereign immunity in suits against state officials or employees. If the plaintiff alleges that state officials or employees violated "statutory or constitutional law," "[s]overeign immunity affords no protection." *Healy*, 549 N.E.2d at 1247. "This exception is premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not." *Leetaru*, 32 N.E.3d at 596. That exception distinguishes Illinois's sovereign immunity rule from federal law immunity doctrines, which usually apply to bar claims regardless of their potential merit. See, e.g., *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89,

92–93, 120–21 (1984) (reversing on Eleventh Amendment immunity grounds a judgment on the merits for plaintiffs).[2]

*Fritz v. Johnston*, 807 N.E.2d 461 (Ill. 2004), shows the Illinois exception in operation and shows how state-law immunity depends on the merits of the plaintiff's claims. In that case, the plaintiff alleged that state employees conspired to force him to retire from his own state job by falsely telling the police that he had been making threats. Plaintiff alleged civil conspiracy and intentional interference with employment. The Illinois Supreme Court reversed dismissal of the case, holding that sovereign immunity did not apply because the plaintiff's factual allegations matched the criminal offense of disorderly conduct. *Id.* at 467, citing 720 Ill. Comp. Stat. 5/26-l(a)(4) (West 1998).

This court's Illinois sovereign immunity cases have acknowledged this exception to sovereign immunity but most often have found that the exception did not apply. See, e.g., *Turpin v. Koropchak*, 567 F.3d 880, 884 (7th Cir. 2009) ("Nothing

---

[2] The Illinois exception for illegal acts by state officials resembles the federal rule under *Ex parte Young*, 209 U.S. 123 (1908), but has much broader effects. *Ex parte Young* allows federal suits for injunctive and declaratory relief to require state officials to comply with federal law. The Illinois exception also allows suits for damages against state employees in their individual capacities. Compare *MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323, 337 (7th Cir. 2000) ("the *Ex parte Young* doctrine allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law"), with *Fritz v. Johnston*, 807 N.E.2d at 468 ("Whenever a state employee performs illegally [or] unconstitutionally ... a suit may still be maintained against the employee in his individual capacity[.]"), quoting *Wozniak v. Conry*, 679 N.E.2d 1255, 1259 (Ill. App. 1997).

in Turpin's complaint alleges a violation of the State constitution or a statute, so this exception is off the table."). In particular, *Richman v. Sheahan*, 270 F.3d 430 (7th Cir. 2001), cabined the exception. We noted that the plaintiff had alleged a constitutional violation, but we found that sovereign immunity applied nonetheless because the plaintiff's state-law claims were "not dependent on the alleged constitutional violation." *Id*. at 442. *Richman*, however, preceded *Fritz*, which permitted state-law claims that did not depend on constitutional or statutory violations. *Fritz*, 807 N.E.2d at 467.

*Richman* also preceded *Leetaru*, which just last year reaffirmed the exception in broad terms, over a dissent that would have narrowed it to a scope closer to the federal *Ex parte Young* doctrine. *Leetaru*, 32 N.E.3d at 611–12 (Burke, J., dissenting). Despite the force of the dissent, our role under *Erie* is to take the *Leetaru* majority opinion at its word: the exception applies whenever "agents of the State have acted in violation of statutory or constitutional law." *Id*. at 597 (majority opinion).

In this case, Murphy alleged and then proved that the defendants' actions violated the United States Constitution. He also alleged and proved the factual elements of the Illinois criminal offense of aggravated battery. That statute requires (1) "a battery, other than by the discharge of a firearm," and (2) that the defendant "knowingly … [c]auses great bodily harm." 720 Ill. Comp. Stat. 5/12-3.05(a)(l) (West Supp. 2016) (effective July 1, 2011). Murphy alleged and proved to the jury that Officer Smith punched his face and head and choked him, then threw him into a cell with such force that he hit his face on a metal toilet. Officer Smith did so "without justification." Cf. 720 Ill. Comp. Stat. 5/12-3(a) (West 2002) (defining

criminal battery as contact "without legal justification"). Murphy suffered "serious and permanent injury" and required reconstructive surgery. Since Murphy alleged and proved that Smith and Fulk acted "in violation of statutory or constitutional law," sovereign immunity does not bar his state-law claims. *Fritz*, 807 N.E.2d at 467, quoting *Healy*, 549 N.E.2d at 1247.[3]

III. *Attorney Fee*

The Prison Litigation Reform Act sets limits on attorney fees awarded to prisoners who prevail in civil rights cases. 42 U.S.C. § 1997e(d). Whenever such a prisoner receives a monetary judgment, "a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant." § 1997e(d)(2).

The district court interpreted that language to permit it to exercise its discretion in choosing the percentage of the damage award that should go toward the attorney fee, so long as the choice was no greater than 25 percent. The court allocated 10 percent of the damage award to satisfy the attorney fee award. That interpretation is consistent with decisions of

---

[3] We emphasize that Murphy both alleged *and proved* the violations in this case. Most Illinois cases dealing with this exception to sovereign immunity focus on the plaintiff's allegations because the appeals have arisen from motions to dismiss on the pleadings. We believe Illinois also requires a plaintiff ultimately to prove the alleged violations. For example, *Leetaru* explained that "sovereign immunity affords no protection when agents of the State *have acted* in violation of statutory or constitutional law or in excess of their authority," and in reversing dismissal on the pleadings, the court allowed defendants on remand to show their conduct was not "*in fact*" unauthorized, illegal, or in violation of plaintiff's rights. See 32 N.E.3d at 597 (emphasis added).

other circuits, which allow such discretion. See *Boesing v. Spiess*, 540 F.3d 886, 892 (8th Cir. 2008) ("plain language of 42 U.S.C. § 1997e(d)(2) does not require the district court to automatically apply 25 percent of the judgment to pay attorney's fees"); *Parker v. Conway*, 581 F.3d 198, 205 (3d Cir. 2009) (agreeing with *Boesing*).

We have read the statute differently. In *Johnson v. Daley*, 339 F.3d 582, 585 (7th Cir. 2003) (en banc), we explained that § 1997e(d)(2) required that "attorneys' compensation come[] first from the damages." "[O]nly if 25% of the award is inadequate to compensate counsel fully" does the defendant contribute more to the fees. *Id*. We continue to believe that is the most natural reading of the statutory text. We do not think the statute contemplated a discretionary decision by the district court. The statute neither uses discretionary language nor provides any guidance for such discretion.

Accordingly, we REMAND the case to the district court to modify its judgment to require Murphy to pay from the judgment the sum of $76,933.46 toward satisfying the attorney fee the court awarded. In all other respects the judgment is

AFFIRMED.

MANION, *Circuit Judge*, concurring. I join the court's opinion. I write separately to address the scope of Illinois' sovereign immunity defense for state employees sued in their individual capacities, which has been a difficult issue for the Illinois state courts. Because the plaintiff in this case prevailed on federal constitutional claims as well as state claims, only a small portion of the judgment is at stake in this appeal. Yet the case still presents an important issue of state law: to what extent Illinois' State Lawsuit Immunity Act and the Court of Claims Act confines intentional tort claims against state employees to the Illinois Court of Claims.

The State Lawsuit Immunity Act prohibits the State of Illinois from being named as a defendant in any court, with limited exceptions. 745 ILCS 5/1. One of those exceptions is the Court of Claims Act, which created that court as the "exclusive forum for resolving lawsuits against the state." *People ex rel. Manning v. Nickerson*, 702 N.E.2d 1278, 1280 (Ill. 1998) (internal quotation marks omitted). It provides in relevant part that the Court of Claims has exclusive jurisdiction over "[a]ll claims against the State for damages sounding in tort." 705 ILCS 505/8(d). In effect, the State's limited waiver of sovereign immunity gives it home-court advantage when it defends tort claims for damages. See *Loman v. Freeman*, 890 N.E.2d 446, 458 (Ill. 2008) (no right to a jury trial in the Court of Claims); *Reichert v. Court of Claims*, 786 N.E.2d 174, 177 (Ill. 2003) (no right to appeal the merits of a Court of Claims decision).

The dispositive question here is whether state-law portions of this suit (the battery claims) against the defendant prison guards are really "against the State" for the purposes of these statutes. The most natural reading of the statute seems to preclude any court other than the Illinois Court of

Claims from exercising jurisdiction over the plaintiff's intentional tort claim. Battery is a tort and the defendants here were acting in the scope of their state employment when they (according to the jury) battered the plaintiff. Had they not been doing so, the Illinois Attorney General's office would not have appeared on their behalf, as it did in the district court and in this court. 5 ILCS 350/2(a) & (e) (providing that the Illinois Attorney General will appear on behalf of a state employee sued for something "arising out of any act or omission occurring within the scope of the employee's State employment" and indemnify upon judgment against the employee in such cases). In every practical sense, this is a judgment that "could operate to control the actions of the State or subject it to liability." *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992).

However, the Illinois Supreme Court has construed "against the State" more narrowly in suits against state employees. See, e.g., *Leetaru v. Bd. of Trs.*, 32 N.E.3d 583, 596 (Ill. 2015); *Loman*, 890 N.E.2d at 462.[1] That court would hold that the defendants here acted outside their authority and therefore that immunity does not apply. We are bound to follow that court's holdings and reasoning. Therefore, I join the opinion of the court in full.

---

[1] Several opinions of Illinois' intermediate appellate court read the Court of Claims Act more broadly; their reasoning would bring the plaintiff's battery claims within the exclusive jurisdiction of the Court of Claims. See, e.g., *Grainger v. Harrah's Casino*, 18 N.E.3d 265, 273–75 (Ill. App. Ct. 2014); *Sellers v. Rudert*, 918 N.E.2d 586, 591–92 (Ill. App. Ct. 2009); *Welch v. Illinois Supreme Court*, 751 N.E.2d 1187, 1194 (Ill. App. Ct. 2001); *Campbell v. White*, 566 N.E.2d 47, 53 (Ill. App. Ct. 1991). However, we are bound only by the opinions of Illinois' highest court.