SHEPHERD, Circuit Judge, concurring.
I concur in full with Judge Wollman's opinion. As it recounts, when selecting the Pacesetter-Medtronic US agreement as a comparable uncontrolled transaction ("CUT"), the tax court did not sufficiently address: (1) the fact it arose out of litigation; (2) the lump sum payment that was a part of it; (3) the cross-licenses that were a part of it; and (4) certain intangibles that *616 were not part of it.[3] I write separately to make two additional points. First , not only are those factors important to ensure adequate appellate review, but the applicable Treasury Guidelines mandate that they be considered. And second , when searching for CUTs to assess damages in patent infringement actions, courts routinely reject patent licenses that are different in even one of the four ways that was not adequately addressed by the tax court. Simply put, the Treasury Department and courts in patent cases deem these factors significant. At the very least, the taxpayer deserves an explanation why they are insignificant in this case.
The Treasury Guidelines operate with a mix of "mandatory" and "discretionary words." See Murphy v. Smith, --- U.S. ----, 138 S.Ct. 784, 789, 200 L.Ed.2d 75 (2018). And it is a well-worn principle of reading legal texts that "mandatory words impose a duty; permissive words grant discretion." See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 112 ( West 2012). In this case, the Treasury Guidelines "create[ ] a mandate, not a liberty" when it comes to engagement with the four factors not addressed by the Tax Court. Smith, 138 S.Ct. at 787. When speaking generally about comparability, the Treasury Guidelines state that, regardless of the comparability test deployed, "each method requires analysis of all of the factors that affect comparability." Treas. Reg. § 1.482-1(d)(1) (emphasis added). The Treasury Guidelines go on to say that "[s]uch factors include ... functions ... [and] contractual terms." Id. § 1.482-1(d)(1) (i)-(ii). All four of the factors identified by Judge Wollman's opinion touch on either "functions" or "contractual terms." The "require[d] analysis" was missing from the Tax Court's discussion.[4]
Courts assessing damages in patent cases find these factors decisive as well. In determining damages in a patent infringement case, the goal is to get to a number which would have been arrived at during "a hypothetical negotiation between the patentee and the infringer when the infringement began." ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 868 (Fed. Cir. 2010). The standard is essentially the same as the one set forth by the Treasury Guidelines. See 12 James. J. Hall, Mertens Law of Federal Income Taxation § 45I:25 (noting "Section 482" is meant to determine an "arm's-length price" which "is the price an unrelated party would have paid under the same circumstances for the property involved in the controlled transaction"). In the patent context, previous patent licenses are used as proxies for the "hypothetical negotiation." But in conducting this analysis, courts often shy away from comparisons that differ on even one of the four planes the tax court failed to analyze here.
For example, take lump sum payments. As one academic has noted, "courts generally *617 frown upon the use of one type of license-for instance, a lump sum license-to calculate a different type of license, such as a running royalty in which the defendant pays per unit sold over time." Jonathan S. Masur, The Use and Misuseof Patent Licenses, 110 Nw. U. L. Rev. 115, 124 (2015). Indeed, the Federal Circuit has held that "certain fundamental differences exist between lump-sum agreements and running-royalty agreements." Wordtech Sys., Inc v. Integrated Networks Solutions, Inc., 609 F.3d 1308, 1320 (Fed. Cir. 2010) (internal quotation marks omitted) (rejecting comparison between lump-sum and royalty licenses and remanding for new trial on damages). Here, as Judge Wollman's opinion notes, the Pacesetter-Medtronic agreement contained a $75 million lump-sum payment whereas the Medtronic US-Medtronic Puerto Rico agreement was a royalty-only one. The tax court failed to grapple with this difference.
Next, consider cross licenses. Courts have held that agreements which include cross licenses are inadequate comparisons for "hypothetical negotiation[s]"-damage assessments-where they are not involved. See, e.g., ePlus, Inc. v. Lawson Software, Inc., 764 F.Supp.2d 807, 813 (E.D. Va. 2011), aff'd, 700 F.3d 509 (Fed. Cir. 2012). Indeed, in a striking parallel to this case, the Lawson Software court held that comparison agreements which involve "lump[-]sum payments ... and extensive cross-licensing agreements ... differ considerably from the factual predicates ... where the hypothetical negotiation does not involve a lump[-]sum payment or cross-licensing of a wide variety of patents." Id.
The same mismatch problem is found when attempting to use settlements. As Judge Easterbrook has noted: "The terms of a settlement reflect [litigation] costs as well as the parties' estimates about the probable outcome on the merits if the case proceeds. It is risky to use the parties' predictions as a reason to decide some other case on the merits." In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig., 831 F.Supp. 1354, 1379 (N.D. Ill. 1993) (Easterbrook, J., sitting by designation), aff'd, 71 F.3d 1573 (Fed. Cir. 1995). That said, the Federal Circuit has recognized that sometimes the "most reliable license" for comparison may "ar[i]se out of litigation." Lansa, Inc., 594 F.3d at 872 ; but see id. at 880 (Newman, J., concurring in part and dissenting in part) (noting that "unpredictability of patent litigation remains notorious" and that "particular litigation settlements may be based on unique considerations"). Regardless, Judge Easterbrook's exact warning is borne out here: the Pacesetter-Medtronic settlement agreement recitals note that the parties entered into the agreement to reduce future litigation costs. And, again, this was not accounted for by the tax court.
Finally, some intangibles were not accounted for. Failing to do so is reversible error in the patent context. Wordtech Sys., Inc., 609 F.3d at 1320 ("We stressed that comparisons of past patent licenses to the infringement must account for the technological and economic differences between them." (internal quotation marks omitted) ). Here, as Judge Wollman's opinion notes, the intangibles not included in the Pacesetter-Medtronic agreement, but included in the Medtronic-Medtronic Puerto Rico, are varied-and valuable. Without a doubt, "additional findings regarding the comparability" of the intangibles are needed. Maj. Op. 615.
To conclude, "any search for a 'comparable uncontrolled [transaction]' " is undoubtedly "quixotic." Michael J. Graetz & Rachael Doud, *618 Technological Innovation, International Competition, and the Challenges of International Income Taxation, 113 Colum. L. Rev. 347, 416 (2013). But, I harbor serious doubts that the Medtronic-Pacesetter agreement can serve as an appropriate CUT for the reasons stated above. Cf. South Dakota v. Wayfair, Inc., --- U.S. ----, 138 S.Ct. 2080, 2086, --- L.Ed.2d ---- (2018) ("It is essential to public confidence in the tax system that [courts] avoid creating inequitable exceptions."). In the first instance, however, the tax court should conduct the "require[d] analysis" mandated by the Treasury Regulations in order ensure meaningful appellate review. See Treas. Reg. § 1.482-1(d)(1).

Judge Wollman also correctly points out that the tax court "did not decide the amount of risk and product liability that should be allocated between Medtronic US and Medtronic Puerto Rico." Maj. Op. 615.

At oral argument, counsel attempted to draw a parallel between our sentencing jurisprudence and the Treasury Regulations. In the sentencing context we have held that "[i]f a sentencing judge adverts to some of the considerations contained in [18 U.S.C. § 3553(a) ]" we are satisfied that the court "was aware of the entire contents of the relevant statute."United States v. Hawkins, 375 F.3d 750, 752 (8th Cir. 2004) (internal quotation marks omitted). But § 3553(a) states that courts "shall consider" certain factors in imposing a sentence. The Treasury Guidelines demand more: they "require[ ] analysis of all of the factors that affect comparability." Treas. Reg. § 1.482-1(d)(1).